UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COLONY INSURANCE COMPANY,

<div style="margin-left:4em">Plaintiff,</div>

-v-

OZ SOLUTIONS *et al.*,

<div style="margin-left:4em">Defendants.</div>

24 Civ. 1935 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to dismiss counterclaims brought in an insurance dispute. Plaintiff Colony Insurance Company ("Colony"), an insurer, claims that defendants Oz Solutions ("Oz") and Oren Ziv (collectively, the "Oz defendants") made material misrepresentations to it in insurance policy applications in 2016 and 2017. Dkt. 99 (the "First Amended Complaint" or "FAC") ¶¶ 18–29. Based on these misrepresentations, Colony alleges, it issued two insurance policies (the "policies") to the Oz defendants. *Id.* ¶ 27. Colony seeks rescission of the policies and a declaration that it does not have a duty to defend or indemnify the Oz defendants, or any other entity, in three state court actions arising from construction-related defects and injuries. *Id.* at 21–23. The Oz defendants have responded by bringing two counterclaims against Colony. These allege bad faith and breach of the implied covenant of good faith and fair dealing. Dkt. 150 (the "Amended Answer" or "AA"). The counterclaims relate to a settlement Colony negotiated on behalf of the Oz defendants in one of the state court actions.

Currently pending is Colony's motion to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion.

I.      **Background**[1]

    A.      **The Parties**[2]

Colony is a Nebraska corporation with its principal place of business in Illinois.  FAC

¶ 7.  Oz is a New York corporation with its principal place of business in New York.  *Id.* ¶ 8.

Ziv is a New York resident and Oz's sole owner and president.  *Id.* ¶ 9.

    B.      **Factual Background to the Counterclaims**

On December 31, 2018, a business entity known as 470 4th Avenue Fee Owner filed suit

against Danya Cebus Construction LLC ("Danya Cebus"), Adam America LLC ("Adam

America"), and 470 4th Avenue Investors.  AA ¶ 2; FAC ¶ 32.  The suit claimed construction

defects arising from the installation of ductless air conditioner units at 470 4th Avenue in

Brooklyn, New York (the "underlying action").  *Id*.  Danya Cebus then filed third-party actions

against the contractors it had retained to perform work at that property.  FAC ¶ 33.  These

included Oz.  *Id.*

On March 26, 2021, Danya Cebus sent a tender letter to Colony related to the underlying

action.  AA ¶ 7; Dkt. 150-1 ("TL").  It stated that Danya Cebus had contracted with Oz to supply

skilled temporary workers, who "performed work on various components now being claimed to

be defective."  TL at 3.  The tender letter stated that Oz is covered by two policies issued by

---

[1] The Court draws the facts in this decision principally from the First Amended Complaint ("FAC"), Dkt. 99; the Amended Answer ("AA"), Dkt. 150; and the documents incorporated into or integral to the Oz defendants' counterclaims.  For purposes of resolving the motion to dismiss the counterclaims, the Court accepts all factual allegations in the AA as true, drawing all reasonable inferences in the Oz defendants' favor.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The facts recited here focus on those relevant to the counterclaims.

[2] The other defendants named in the FAC are not parties to the Oz defendants' counterclaims. Those are Endurance American Insurance Company *d/b/a* Sompo International, 325 Associates LLC, Slate Property Group LLC, John Does 1–10, and ABC Companies 1–10.  FAC ¶¶ 10–15.

Colony that it claimed cover the construction dispute. *Id.* at 3. It demanded that Colony assume the defense of all defendants in the underlying action and provide them with full indemnification. *Id.* at 4.

On April 17, 2023, Colony responded. AA ¶ 9; Dkt. 150-2 ("ROR"). It stated that it "has agreed to defend Oz pursuant to a complete reservation of rights" under the policies, and provided contact information for attorney Gary Strong, whom it had retained to handle the representation. ROR at 2. Colony stated that the policies "provide limits of $1,000,000 per each occurrence, subject to a products-completed operation aggregate of $2,000,000, and $2,000,000 in the general aggregate subject to a $10,000 deductible." ROR at 3.

On March 14, 2024, Colony brought this case ("the instant action") before this Court. It seeks a declaratory judgment that the policies are void on account of material misrepresentations in the Oz defendants' insurance applications. FAC at 21–23.

A little over a year later, in April 2025, attorney Strong, on behalf of Oz, negotiated a settlement agreement with Adam America and Danya Cebus, under which Oz would pay $600,000—within the scope of the policies—to settle all claims against Oz in the underlying action. AA ¶ 14; Dkt. 150-4 (the "proposed settlement" or "PS"). The proposed settlement provides that the $600,000 payment will not be "due and payable" until several events have occurred, including "the full execution and delivery of this Agreement by the Parties." PS ¶ 3. In addition, the proposed settlement provides for the mutual release of all claims by Adam America and Danya Cebus against the Oz defendants, and vice versa. *Id.* ¶¶ 4–5. The mutual release provision also covers any claims asserted by Colony against Danya Cebus in the instant action. *Id.* ¶ 8.

On June 20, 2025, Strong contacted counsel for the Oz defendants to inform them that the parties had reached a settlement and that he was awaiting Ziv's signature on behalf of Oz. *Id.* ¶ 21. On June 24, 2025, Strong contacted Ziv regarding the proposed settlement. *Id.* ¶ 22. That same day, Ziv notified Strong that he did not authorize the settlement amount. *Id.* ¶ 23.

As of August 11, 2025—when the Oz defendants filed their counterclaims—the settlement has not been executed. *Id.* ¶ 24.

### C.    Relevant Procedural History

On March 14, 2024, as noted, Colony initiated the instant action. Dkt. 1. On April 11, 2025, Colony filed the FAC, the operative complaint today. Dkt. 99. On May 1, 2025, the Oz defendants answered. Dkt. 107. On August 11, 2025, they filed their Amended Answer, Dkt. 150, which brought counterclaims against Colony for bad faith and breach of the implied covenant of good faith and fair dealing, arising from Colony's efforts to settle the underlying action.

On September 8, 2025, Colony moved to dismiss the counterclaims. Dkt. 157 ("MTD"). On September 29, 2025, the Oz defendants opposed. Dkt. 162 ("Opp'n"). On October 10, 2025, Colony replied. Dkt. 166 ("Reply").

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."

*Twombly*, 550 U.S. at 558.  For the purpose of resolving a motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  That tenet, however, "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

### III.    Discussion

Colony moves to dismiss both counterclaims under Rule 12(b)(6).  For the following reasons, the Court grants the motion.

### A.    Bad Faith

"At the root of the 'bad faith' doctrine is the fact that insurers typically exercise complete control over the settlement and defense of claims against their insureds, and, thus, under established agency principles may fairly be required to act in the insured's best interests." *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 452 (1993).[3]  To state a claim for bad faith, the allegations must support "that the insurer's conduct constituted a gross disregard of the insured's interests—that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer."  *Id.* at 453 (citation omitted).  This standard is not satisfied by "an insurer's conduct that amounts to a mistake in judgment or negligence."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 399 (2d Cir. 2000).  "There is a 'strong presumption in New York against a finding of bad faith by an insurer.'"  *Tokio Marine v. Macready*, 803 F. Supp. 2d 193, 204 (E.D.N.Y. 2011) (quoting *Schwartz v. Twin City Fire Ins. Co.*, 492 F. Supp. 2d 308, 328 (S.D.N.Y. 2007)).

---

[3] The parties agree that New York law governs this dispute.

The Oz defendants' AA alleges that Colony acted in bad faith when it agreed to the proposed settlement without the Oz defendants' authorization.  AA ¶ 29.  It alleges that Colony sought to "incur substantial debt on Oz's behalf" because Colony was simultaneously, in the instant action, pursuing rescission of the policies and therefore repayment of the settlement amount by the Oz defendants to Colony.  *Id.* ¶¶ 29–31.

Colony counters that it did not have an obligation to obtain the Oz defendants' consent to settle because the policies did not contain a consent-to-settle provision.  MTD at 11–12.  Colony also argues that the allegation that it sought to saddle Oz with "substantial debt" is belied by the fact that Colony settled the claims within the policy limits, and with the policies in effect, Colony stood to pay the full settlement.  *Id.* at 11, 13.  As a result, Colony contends, the Oz defendants faced monetary exposure only if the policies were rescinded based on a finding in the instant action that the Oz defendants had made material misrepresentations in securing them.  *Id.* at 13.

Colony is correct.

The archetypal bad faith case is one in which an insurer refuses a settlement offer within the policy limits and opts to go to trial, exposing the insured to the risk of a judgment exceeding those limits.  *See, e.g.*, *DiBlasi v. Aetna Life & Cas. Ins. Co.*, 542 N.Y.S.2d 187, 191–92 (2d Dep't 1989); *Pinto*, 221 F.3d at 400–02 (2d Cir. 2000); *Knobloch v. Royal Globe Ins. Co.*, 38 N.Y.2d 471, 480 (1976); *see also Pavia*, 82 N.Y.2d at 453–54 ("[A] bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted.").

That is not this case.  Colony settled the claims against the Oz defendants for $600,000— substantially less than the policies' $1 million limits.  Colony did not refuse an opportunity to

settle in the hopes of obtaining a smaller judgment at trial.  As a result, the Oz defendants have

not suffered an excess judgment or loss of a within-limits settlement opportunity—the typical

injuries in a bad faith case.  *See, e.g.*, *Feliberty v. Damon*, 72 N.Y.2d 112, 117 (1988) (no bad

faith where insurer settled "well within policy limits"); *Ohio Cas. Ins. Co. v. Transcon. Ins. Co.*,

No. 5 Civ. 6432, 2009 WL 9006522, at *4, 5 (S.D.N.Y. May 26, 2009) (same where claim was

premised on insurer's "conduct during negotiation" of the settlement, but there was no allegation

that any "settlement opportunity was lost"), *aff'd*, 372 F. App'x 107 (2d Cir. 2010).  Indeed, it is

not clear that the Oz defendants would face pecuniary harm even were the policies rescinded.

That is because, under the proposed settlement, the $600,000 is not due and payable until the

settlement is executed by the parties, which it has not been.

Critically here, the AA does not plead facts that support an inference of bad faith on

Colony's part.  The policy concerns animating the bad faith doctrine—*i.e.*, "conflicting interests"

between the insurer and insured "as to whether settlement should be made," *Bourget v. Gov't

Emp. Ins. Co.*, 456 F.2d 282, 285 (2d Cir. 1972) (citation omitted)—are not implicated here.

Quite the contrary, the settlement that Colony negotiated on behalf of the Oz defendants stood to

cost Colony (and Colony only) unless the policies were held void and rescinded in the instant

action—a scenario that Colony had (and has) no assurance would occur.  *See* MTD at 13

(arguing that Oz defendants' allegation that Colony would willingly overpay belies common

sense because "[s]uch conduct would only serve to increase Colony's exposure should it fail to

prevail in obtaining a declaratory judgment, risking hundreds of thousands of dollars in

liability").  Colony's financial incentive, in harmony with that of the Oz defendants, was to

achieve the lowest settlement possible.

The Oz defendants make two counterarguments.  Neither is persuasive.

First, they argue that the fact that Colony did not seek to obtain the Oz defendants' consent before agreeing to the proposed settlement establishes Colony's bad faith. Opp'n at 5. Although a "failure of the insurer to keep its insured informed of settlement negotiations can constitute some evidence of bad faith," it generally does not, without more, establish the insurer's bad faith. *Smith v. Gen. Acc. Ins. Co.*, 91 N.Y.2d 648, 653–55 (1998) (proper for jury to consider insurer's failure to notify insured of settlement negotiations along with eight other factors relevant to bad faith); *see also Redcross v. Aetna Cas. & Sur. Co.*, 688 N.Y.S.2d 817, 821 (3d Dep't 1999) ("[T]he failure of the insurer to inform the insured of settlement negotiations is properly considered along with all the other facts and circumstances in determining whether the insurer was acting in bad faith."). An insurer's failure to notify the insured about settlement negotiations has been found to establish bad faith where insurers spurned within-limits settlements and opted to go to trial, thereby exposing the insureds to large verdicts. *See, e.g.*, *Raquet v. Travelers Cas. & Sur. Co.*, 770 N.Y.S.2d 540, 541 (4th Dep't 2003) (finding bad faith claim plausibly pled where insurer "failed to keep [insured] informed of the progress of the case and the status of settlement negotiations, if any, despite [insurer's] knowledge that a large excess verdict was likely"); *Transcare New York, Inc. v. Finkelstein, Levine & Gittlesohn & Partners*, 804 N.Y.S.2d 63, 64 (1st Dep't 2005) (sustaining bad faith claim where insurer failed to inform insured as to the "status of the settlement negotiations," rejected opportunity to settle well below the policy limit, and opted to go to trial, resulting in "a verdict well in excess of the policy limit"). But, as described above, that is not the situation here.

Moreover, for multiple reasons, Colony's alleged failure to keep the Oz defendants abreast of settlement talks does not indicate its bad faith. Most significant, Colony had the same objective in the negotiations as the Oz defendants—to settle with the lowest possible payment

8

obligation—because Colony was then wholly responsible for payment, and remains so today, unless it secures rescission of the policies in this case.  This case thus differs from those where notification by an insurer to an insured of a within-policy demand was held necessary to safeguard the insured's interests because, in the event the insurer spurned the demand, the insured alone would face financial risk from a trial judgment exceeding the policy's limits.[4]  In addition, the policies here lacked a consent-to-settle provision.  Colony thus lacked a contractual obligation to notify, or obtain the consent of, the Oz defendants before agreeing on settlement terms.  *Cf. Fed. Ins. Co. v. SafeNet, Inc.*, 817 F. Supp. 2d 290, 305 (S.D.N.Y. 2011) (insurer erred in "fail[ing] to comply with the consent-to-settle provision").  Finally, the Oz defendants are not alleged to have inquired as to the status of the settlement negotiations or asked to be so notified.  *See Feliberty*, 72 N.Y.2d at 117 (no bad faith where insured "did not put the insurer on notice that he wished to be informed of any contemplated settlement").  That Colony assertedly did not give notice to the Oz defendants of the settlement—the cost of which presumptively will fall entirely on Colony—thus does not bespeak a "gross disregard of the insured's interests." *Pavia*, 82 N.Y.2d at 453.[5]

---

[4] *See Feliberty*, 72 N.Y.2d at 117 (notification enables insured to "protect themselves against liability that exceeded their coverage," such as by "increas[ing] the carrier's settlement offer with their own funds").

[5] The Oz defendants distinguish the cases cited by Colony on the ground that the bad faith claims in each arose from an insurer's refusal to settle a lawsuit on terms that stood to spare the insured financial exposure.  Opp'n at 5.  That point is valid.  But the Oz defendants have not cited any case sustaining bad faith claims in circumstances resembling these—where an insurer, without consultation, obtained a settlement within the policy limits.  The cases that the Oz defendants do cite are inapposite, *see Smith*, *supra*; *DiBlasi*, 542 N.Y.S.2d at 192 (finding bad faith where insurer opted for trial instead of accepting settlement offer within policy limits), or affirmatively unhelpful to Oz's cause, *see Pavia*, 82 N.Y.2d at 455 (no bad faith where insurer failed to abide by a settlement deadline); *Dano v. Royal Globe Ins. Co.*, 59 N.Y.2d 827, 829–30 (1983) (no bad faith where plaintiffs failed to "present[] evidentiary proof of the gross disregard of the insured's rights").

9

Second, the Oz defendants argue that Colony acted in bad faith by negotiating a settlement that waived the Oz defendants' claims against Danya Cebus and Adam America, and released all claims between Colony and Danya Cebus in the instant action. Opp'n at 5–6. This argument is problematic for multiple reasons.

Most fundamentally, the AA, which sets out the counterclaim of bad faith, does not make any allegations along these lines. The AA's bad faith claims instead are exclusively based on the asserted unreasonableness of the $600,000 settlement amount that Colony negotiated. *See* AA ¶¶ 14–16, 20, 29. The AA does not reference the proposed settlement's release provision or its provision dismissing Danya Cebus from this action. The Oz defendants' defense of the AA's bad faith claim based on these unpled allegations are thus improper. *See Cal Distrib., Inc. v. Cadbury Schweppes Ams. Beverages, Inc*, No. 6 Civ. 496, 2007 WL 54534, at *6 (S.D.N.Y. Jan. 5, 2007) ("It is axiomatic that a complaint cannot be amended by the briefs in opposition to a motion to dismiss." (cleaned up) (quoting *O'Brien v. Nat'l Property Analysts Partners*, 721 F. Supp. 222, 229 (S.D.N.Y. 1989))).

In addition, the Oz defendants do not satisfactorily explain how the mutual release provision—a standard provision which, to the Oz defendants' benefit, released all of Danya Cebus and Adam America's claims against them—"objectively is not in [d]efendants' best interests." Opp'n at 5. They appear to suggest that, in one potential scenario, this provision could prove detrimental to them: if they (1) were to lose the instant rescission action, and (2) were to lose in the underlying action, but, pursuant to the settlement agreement, could not seek indemnification from Danya Cebus and Adam America. That scenario is implausible, however, because the settlement dismisses the Oz defendants from the underlying action. *See* AA ¶ 14 (noting that proposed agreement would "settle all causes of action in the [u]nderlying

10

[a]ction against [the Oz defendants] in exchange for a one-time [$600,000] payment"). The feared chain of events, speculative at each link, does not describe the actual pecuniary harms that courts have required to sustain a claim of bad faith. *See Young v. Am. Cas. Co. of Reading, Pa.*, 416 F.2d 906, 911 (2d Cir. 1969) ("New York law requires proof of *actual loss* to support recovery by the insured or his estate for the insurer's bad faith in failure to settle." (emphasis added)); *DiBlasi*, 542 N.Y.S.2d at 188–89 ("The measure of damages in a 'bad faith' case involving a solvent insured against whom a judgment in an amount in excess of the policy limits has been rendered is the amount of the judgment in excess of the policy limits plus interest."). And in claiming that the mutual release provision is not in their best interests, the Oz defendants do not account for the scenarios in which that provision could benefit them.[6]

For these reasons, the AA's allegations are inadequate to support a finding of bad faith. *See, e.g.*, *Feliberty*, 72 N.Y.2d at 117; *Ohio Cas. Ins. Co.*, 2009 WL 9006522, at *5. The Court accordingly dismisses this claim.

---

[6] The AA's counterclaim also criticizes the proposed settlement on the ground that it makes the Oz defendants, rather than Danya Cebus, responsible for paying the $600,000. *See* AA ¶ 16 (settlement is "unreasonable because it appears to shift all liability to Oz, where Oz merely supplied temporary workers to perform" at Danya Cebus's direction). But the settlement resolves a third-party action between Danya Cebus and Oz, not the entire underlying action. And neither the FAC nor the AA alleges that Danya Cebus was liable in the underlying action, whereas, on the facts pled by the Oz defendants, there is a plausible basis to infer liability on the part of these defendants. The AA incorporates a letter from Danya Cebus, which represents that Oz's workers "not only moved the PTAC units, but they also performed work related to the installation of 262 PTAC units," which caused the construction defects that were the subject of the underlying action. *Id.* ¶ 11 (quoting Dkt. 150-3). In addition, the employee agency agreement between Oz and Danya Cebus states that Oz "shall indemnify and hold [Danya Cebus] harmless from any claim arising out of or related to the Services or this Agreement." Dkt. 150-5 at 2.

### B.     Implied Covenant of Good Faith and Fair Dealing

Under New York law, a duty of good faith and fair dealing is implied in every contract, to the effect that neither party "shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *M/A–COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (citing *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 79 (1933)).  The elements of a claim of breach of the implied covenant are similar to causes of action for breaches of duties of care, in that it requires the existence of a duty, breach of that duty, causation, and damages.  *See Washington v. Kellwood Co.,* No. 5 Civ. 10034, 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009).

The AA alleges that Colony breached the implied covenant of good faith and fair dealing via the same conduct underlying its bad faith claim: negotiating and authorizing an unfavorable settlement on behalf of the Oz defendants without their consent.  AA ¶¶ 37–39.  Colony argues that the claim must be dismissed because, if it prevails in the instant action and the policies are declared void, there will be no valid contract, such that an implied covenant claim cannot lie. MTD at 15.

The Court finds that dismissal of this claim is warranted for a different reason.  Under New York law, claims of bad faith and breach of the implied covenant are effectively the same. *See, e.g.*, *Schwartz*, 492 F. Supp. 2d at 330 ("In order to demonstrate that an insurer has breached the duty of good faith, and *concomitantly acted in bad faith*, New York law requires a plaintiff to prove that the insurer acted with 'gross disregard' of its insured's interests." (emphasis added) (quoting *Pavia*, 82 N.Y.2d at 453–54)), *aff'd sub nom. Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135 (2d Cir. 2008); *Smith*, 91 N.Y.2d at 652–53 (bad faith liability "stems from the general

12

principle that a covenant of good faith and fair dealing is implied in all contracts, including insurance policies"); *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 295 F.3d 232, 241 (2d Cir. 2002) (insurer has duty "to act in good faith when deciding whether to settle a claim," which it breaches by acting in "bad faith" (citation omitted)).  Accordingly, the Court's analysis of the AA's bad faith claim applies to the implied covenant claim, requiring its dismissal.

## CONCLUSION

For the reasons stated above, the Court grants Colony's motion to dismiss the Oz defendants' counterclaims. The Clerk of Court is respectfully directed to terminate the motion pending at docket 157.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Date:    January 6, 2026
New York, New York