UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| COLONY INSURANCE CO.,<br><br>　　　　　　　　　　　　　　　Plaintiff,<br>　　　　　　　　-v-<br><br>OZ SOLUTIONS *et al.*,<br><br>　　　　　　　　　　　　　　　Defendants. | 24 Civ. 1935 (PAE)<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion for summary judgment brought in an insurance dispute. Plaintiff Colony Insurance Company ("Colony") claims that defendants Oz Solutions ("Oz") and Oren Ziv (collectively, the "Oz defendants") made material misrepresentations to it in insurance policy applications in 2016 and 2017. Based on these, Colony claims, it issued two insurance policies (the "policies") to the Oz defendants. Colony seeks rescission of the policies and a declaration that it does not have a duty to defend or indemnify the Oz defendants, or any other entity, in three state court actions arising from construction-related defects and injuries.

With discovery complete, the Oz defendants have moved for summary judgment on the ground that Colony's claims against it are time barred under New York law. For the following reasons, the Court grants the motion for summary judgment with respect to these claims.

## I.  Background[1]

### A.  The Parties

Colony is a Nebraska corporation with its principal place of business in Illinois.  Dkt. 197 ("JSF") ¶ 1.  Oz was a New York corporation that dissolved in or around 2018.  *Id.* ¶ 5.  Ziv was the principal of Oz.  *Id.* ¶ 6.

### B.  Factual Background

#### 1.  The Insurance Policies and Purported Misrepresentations

This dispute centers on two insurance policies issued by Colony to the Oz defendants. The 2016 policy, for which the Oz defendants applied on or about June 3 and August 12, 2016, was in effect from August 12, 2016 to August 12, 2017.  *Id.* ¶¶ 11, 13.  The 2017 policy, for which the Oz defendants applied on August 8, 2017, was in effect from August 12, 2017 to August 12, 2018, but was canceled effective March 22, 2018.  *Id.* ¶¶ 12, 14.

Colony claims that the Oz defendants made two material misrepresentations in these applications.  First, it claims, Oz failed to disclose that it was "an employee leasing agency wherein its employees did whatever was asked of them."  *Id.* ¶ 16.  Second, it claims, the Oz

---

[1] The Court draws its account of the facts from the parties' submissions on summary judgment, including their joint statement of undisputed facts, Dkt. 197 ("JSF"); Colony's counterstatement of additional material facts, Dkt. 202-1 ("Pl. Counter 56.1"); and exhibits submitted by both parties in connection with the summary judgment motion, Dkts. 199, 202.  The Oz defendants did not submit a 56.1 statement or response to Colony's counterstatement.

Citations to the JSF or Colony's 56.1 counterstatement incorporate the evidentiary materials cited therein. When facts stated in a party's 56.1 statement are supported by testimonial, video, or documentary evidence and not denied by the other party, or denied by a party without citation to conflicting admissible evidence, the Court finds such facts to be true.  *See* S.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

defendants failed to disclose that, "in addition to debris removal and janitorial cleanup, its employees did additional work, such as operated bobcats, cut concrete, drilled into concrete, and cut PTAC louvers on multiple job sites." *Id.* ¶ 17.

### 2.    The Project and Underlying Action

On or about August 24, 2016, Oz contracted with Danya Cebus Construction LLC ("Danya Cebus") to "supply skilled temporary workers to give temporary services" in connection with a property located at 470 4th Avenue, Brooklyn, New York (the "Project").[2] *Id.* ¶ 20; Dkt. 199-7, Ex. C ("Employment Agreement") at 1.

In 2018, a business entity known as 470 4th Avenue Fee Owner, LLC ("Fee Owner") filed suit against Danya Cebus, Adam America LLC, and 470 4th Avenue Investors (the "underlying action"). Dkt. 199-7, Ex. A at 1.  Fee Owner alleged that those defendants, who had financed, developed, and constructed the building, "cut corners to save time and money," including by ordering the wrong parts for packaged terminal air conditioners ("PTACs") and manually cutting the louvers (*i.e.*, slats on an air conditioner vent) to make those systems work. *Id.* ¶¶ 2–4.

Danya Cebus filed a third-party action against Oz, claiming it had supplied temporary workers who performed work on aspects of the Project that Fee Owner claimed to be defective. JSF ¶¶ 25, 27; Dkt. 199-13 ("Feb. 7, 2022 Letter") at 3.  Oz was also implicated in two other state court actions, one of which (against 470 4th Avenue Investors LLC) appears to have been related to the same property.  JSF ¶ 19.  Colony, as Oz's insurer, retained counsel to defend Oz in all three cases (collectively, the "state court actions"). *Id.* ¶¶ 18–19.

---

[2] The Project's address is also stated as 237 11th Street, Brooklyn, NY.  JSF ¶ 20.

### 3.    Communications and Notes Related to the Underlying Action

The following communications related to the underlying action were sent to or from Colony or its construction defects claim adjusters, Anthony Aguilar and Matthew Clerkin.[3] Aguilar also recorded the following internal notes as to his investigation of the underlying action. The Court recounts these because they bear on the timeliness of this lawsuit.

*March 26, 2021 Tender Letter*:  On or about March 26, 2021, Colony received a tender letter from Russ M. Patane, counsel for the defendants in the underlying action, demanding that Colony assume the defense of those defendants and give them full indemnification and additional insured coverage.  JSF ¶ 24; Dkt. 199-7 ("Tender Letter") at 2–3.  The letter attached the Employment Agreement between Oz and Danya Cebus.  JSF ¶ 26.  It stated, *inter alia*, that Oz would supply temporary workers for Danya Cebus on the Project; that the workers would be considered employees of Oz; and that Oz was obligated to indemnify Danya Cebus for any claim arising out of the agreement.  Employment Agreement at 1.

*April 1, 2021 Note*:  On April 1, 2021, Aguilar entered an internal note related to a conversation with Patane.  JSF ¶ 27; Dkt. 199-8 ("Apr. 1, 2021 Note").  Aguilar wrote that Patane provided the following "overview of the claim" in the underlying action:

> Allegations that the 250 P Tech units that were installed failed and led to water intrusion and flooding which plaintiff says adds up to $4,500,000.  Says that Oz's labor had some role in the installation of the P Tech units and exterior louvres.

JSF ¶ 27.  Aguilar wrote that he and Patane "[a]greed I will go through the file documents I have now to evaluate and be in touch for anything we are missing."  *Id.* ¶ 28; April 1, 2021 Note at 3.

---

[3] Aguilar and Clerkin were employed by Colony's parent company, ARGO Group US, as construction defect claims manager and senior claims adjuster, respectively.  JSF ¶¶ 2–4.

*June 29, 2021 Email*:  On June 29, 2021, Aguilar emailed Thomas Cerussi, counsel for

Danya Cebus.  JSF ¶ 29; Dkt. 199-9.  He stated:

> As we discussed, your records indicate Oz was served this afternoon and that Oz
> cut louvres on the PTAC system which resulted in water intrusion.  Please send
> copies of the proof of service and the job documents showing the scope of work for
> Oz on this project as our insured is adamant that debris and trash removal along
> with sweeping floors was the extent of Oz's scope of work.

JSF ¶ 29.

*June 30, 2021 Note*:  On June 30, 2021, Aguilar entered an internal note related to a

conversation with Cerussi.  JSF ¶ 30; Dkt. 199-10.  Aguilar wrote: "I explained that our insured

indicates he only swept floors, took trash and debris out of the building."  JSF ¶ 30.  He wrote

that Cerussi "[s]ays that Oz cut louvres in the PTAC system and says that this [sic] louvres were

cut incorrectly, the cutting of louvres caused water to come into the building."  *Id.*

*August 31, 2021 Note*:  On August 31, 2021, Aguilar entered another internal note:

> The plaintiff has been unable to produce documentation placing our insured on the
> HVAC system plaintiff alleges our insured damaged.  Our insured disputes doing
> anything other than removal of trash and debris.

*Id.* ¶ 31; Dkt. 199-11.

*September 30, 2021 Email*:  On September 30, 2021, Mark Shifton, whom Colony had

retained as counsel for Oz in the underlying action, emailed Aguilar with a status update.  JSF

¶ 32; Dkt. 199-12 ("Sept. 30, 2021 Email").

> One of Plaintiff's most significant claims is that the Developer/General Contractor
> ordered the wrong louvers for hundreds of packaged terminal air conditioners
> (PTACs), and rather than exchange the louvers, manually cut them to fit the PTACs
> (we know now that it was Danya Cebus who retained the insured to provide the
> labor to cut the louvers).

JSF ¶ 34; Sept. 30, 2021 Email at 3.  The "insured" referred to Oz.  JSF ¶ 33.

*February 7, 2022 Letter*:  On February 7, 2022, attorney Gary Strong, whom Colony had

retained as counsel for Oz in the underlying action (along with Shifton), Dkt. 197-1, sent Clerkin

a letter regarding the underlying action. JSF ¶ 35. Strong summarized the deposition testimony of 13 witnesses, several of whom had stated that Oz had been involved in installing louvers at the Project. Feb. 7, 2022 Letter at 10–13. Strong, referring to Oz as the "insured," further stated:

> On August 24, 2016, the insured contracted with Danya Cebus to provide OSHA-certified temporary laborers to staff the Project. JSF ¶ 37.
>
> The insured's workers were given tasks such as cleaning up the Project, accepting deliveries, and manning the freight elevator. *Id.* ¶ 38.
>
> On October 7, 2016, while construction was ongoing, Danya Cebus requested the insured send several workers to the Project to cut the louvers at 262 separate PTAC units. The insured subsequently invoiced Danya Cebus $3,300 specifically for this work. *Id.* ¶ 39.
>
> The insured is alleged to have been involved with the PTAC units in two respects: (1) the louvers, which were cut by the insured's workers (as directed by Danya Cebus) have been implicated as a possible source of water infiltration; and (2) the HVAC subcontractor (All About AC) has alleged that it was the insured's workers—not All About AC's workers—who physically installed the PTACs into their sleeves. *Id.* ¶ 40

### 4.    This Action

On March 14, 2024, Colony initiated this action. It seeks, *inter alia*, a declaration that the policies are void on account of material misrepresentations in the Oz defendants' insurance applications, and that Colony does not have an obligation to defend or indemnify the Oz defendants in the state court actions. Dkt. 1 (complaint); Dkt. 99 (first amended complaint). Colony also sought to pierce the corporate veil as to Ziv and hold him personally liable for the purported misrepresentations based on his ownership and control of Oz. Dkt. 99 ¶¶ 72–93. Colony brought claims against Oz, Ziv, Endurance American Insurance Company d/b/a Sompo International, and various parties that have since been terminated from this action pursuant to Federal Rule of Civil Procedure 41. *Id.*[4]

---

[4] On August 11, 2025, the Oz defendants filed their Amended Answer. It brought counterclaims against Colony for bad faith and breach of the implied covenant of good faith and fair dealing,

### C.    Procedural History Related to This Motion

On July 30, 2024, the Court held an initial conference and issued a case management plan, Dkt. 59, the deadlines of which it later extended at the parties' requests. *See* Dkt. 190 (noting "more than seven requests for extensions of discovery deadlines"). The parties completed expert discovery on January 5, 2026, and fact discovery on January 23, 2026. Dkts. 173, 176, 190.

On February 11, 2026, the Court held a pre-motion conference and set a schedule for briefing related to the Oz defendants' anticipated summary judgment motion. Dkt. 196. On March 25, 2026, the Oz defendants filed that motion. Dkt. 199 ("Mot."). On April 20, 2026, Colony opposed. Dkt. 202 ("Opp'n"). On May 4, 2026, the Oz defendants replied. Dkt. 203 ("Reply").

## II.    Governing Legal Standard

To prevail on a motion for summary judgment, the movant bears the burden of "show[ing] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau,* 524 F.3d 160, 163 (2d Cir. 2008). In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party, *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), resolving "all ambiguities" in their favor, *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

---

arising from Colony's efforts to settle the underlying action. Dkt. 150. On September 8, 2025, Colony moved to dismiss the counterclaims. Dkt. 157. On January 6, 2026, the Court granted that motion. Dkt. 181.

7

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

**III.    Discussion**

    **A.    Whether Colony's Claims Are Time-Barred**

        **1.    Relevant Legal Framework**

Under New York law, the statute of limitations for a cause of action based on fraud is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8).[5] It is the plaintiff's burden to

---

[5] The parties agree that New York law governs this dispute, and that N.Y. C.P.L.R. § 213(8) provides the applicable statute of limitations. *See* Mot. at 10; Opp'n at 10.

establish that the fraud could not have been discovered before the two-year period before commencement of the action. *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007).

The test for when fraud could have been discovered by plaintiffs is an objective one. It asks whether the circumstances were such "as to suggest to a person of ordinary intelligence the probability that he has been defrauded." *Id.* (citation omitted). A duty of inquiry arises when a plaintiff acquires information that relates directly to the allegedly fraudulent misrepresentations. *See Wen v. New York City Reg'l Ctr., LLC*, 695 F. Supp. 3d 517, 537 (S.D.N.Y. 2023). If the plaintiff does not make an inquiry, knowledge of the fraud will be imputed "as of the date the duty arose." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361–62 (2d Cir. 2013) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005)). If some inquiry is made, the Court "will impute knowledge of what a plaintiff in the exercise of reasonable diligence should have discovered concerning the fraud, and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud." *Id.* at 362 (cleaned up).[6]

### 2.    Analysis

Colony's fraud claim is based on two alleged misrepresentations on Oz's insurance applications. Because these misrepresentations occurred in 2016 and 2017—more than six years before commencement of this action on March 14, 2024—Colony's claim is time-barred unless Colony can establish that it "reasonably could not have discovered the fraud before the two-year period prior to" that date (*i.e.*, March 2022). *Guilbert*, 480 F.3d at 147. Based on the undisputed

---

[6] These federal court cases, and others cited here, apply New York law related to the applicable statute of limitations.

facts and admissible evidence, the Court finds, as a matter of law, that Colony, before March 2022, had knowledge of facts from which the alleged fraud could reasonably have been inferred.[7]

Colony claims that the Oz defendants' first fraudulent misrepresentation was their failure to disclose that Oz was "an employee leasing agency wherein its employees did whatever was asked of them." JSF ¶ 16. But communications from both March 2021 and February 2022 would have alerted Colony to that fact. On March 26, 2021, Patane sent Colony the Tender Letter that attached the Employment Agreement, under which Oz agreed to "supply skilled temporary workers to give temporary services" to Danya Cebus in connection with construction of the Project. Employment Agreement at 1. And on February 7, 2022, Strong emailed Clerkin that Oz "contracted with Danya Cebus to provide OSHA-certified temporary laborers to staff the Project," and that individuals affiliated with the Project had testified to the effect that Oz provided "unskilled labor" and the subcontractor's role was "merely to direct [Oz's] workers where to go." Feb. 7, 2022 Letter at 4, 8, 13. These references to the provision of temporary workers and services should have put Colony on notice that Oz was an employee leasing agency.[8]

Colony claims that the Oz defendants' second fraudulent misrepresentation was the failure to disclose that their employees performed work beyond debris removal and janitorial

---

[7] "[W]here the underlying facts are undisputed, even factually-based issues may be decided as a matter of law." *Lenz v. Associated Inns & Restaurants Co. of Am.*, 833 F. Supp. 362, 371 (S.D.N.Y. 1993) (citation omitted) (granting summary judgment on statute of limitations grounds based on "the face of the documents and the facts in evidence," which showed "plaintiff was placed on notice of the probability of fraud").

[8] Colony does not define the term "employee leasing agency," and a review of New York cases suggests its meaning varies depending on the context (*e.g.*, workers' compensation, tax, overtime hours, *etc.*) and the language of the governing contract. The Court infers, based on the Employment Agreement and its description of Oz's tasks, that Colony uses employee leasing agency to mean a temporary staffing agency.

cleanup, such as operating bobcats, cutting concrete, drilling into concrete, and cutting PTAC louvers on multiple job sites.  JSF ¶ 17.  Numerous communications and internal notes reflect that Colony was on notice that Oz likely performed such additional tasks.  In April and June 2021, Aguilar noted, based on his conversations with counsel for Danya Cebus, that Oz was alleged to have "had some role" in the installation of the PTAC units; that Oz had allegedly "cut louvres in the PTAC system"; and that the louvres had allegedly been "cut incorrectly," which "caused water to come into the building."  *Id.* ¶¶ 27, 30.  On June 29, 2021, Aguilar sent counsel an email as to the same: "As we discussed, your records indicate . . . that Oz cut louvres on the PTAC system which resulted in water intrusion."  *Id.* ¶ 29.  On September 30, 2021, Shifton sent Aguilar a status update, which stated: "[W]e know now that it was Danya Cebus who retained the insured to provide the labor to cut the louvers."  *Id.* ¶ 34.  And on February 7, 2022, Strong informed Clerkin that Danya Cebus had requested that Oz "send several workers to the Project to cut the louvers," and that Oz "subsequently invoiced Danya Cebus $3,300 specifically for this work."  *Id.* ¶ 39.  These communications, the contents and timing of which are undisputed, reveal that Colony was on notice that Oz was alleged to have and had in fact performed work on the Project beyond debris removal and janitorial cleanup.

Because the undisputed facts and evidence show that Colony had been informed of facts suggestive of the purported fraud, Colony had a duty to inquire as early as April 2021, when it had received information (as reflected in the March 2021 Tender Letter and April 2021 Note) related to both of Colony's alleged misrepresentations.  *See Cohen*, 711 F.3d at 361 ("duty to inquire is triggered by information that relates directly to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants" (citation omitted)).  There is some evidence that Colony did so inquire.  On June 29, 2021, Aguilar sought from counsel for

11

Danya Cebus "the job documents showing the scope of work for Oz." JSF ¶ 29. And on August 31, 2021, Aguilar noted that "plaintiff has been unable to produce documentation placing our insured on the HVAC system," suggesting that Colony had requested such documentation from the plaintiff in the underlying action. *Id.* ¶ 31. Accordingly, the Court does not impute knowledge of the fraud to Colony as of the date that its duty to inquire arose. *See Cohen*, 711 F.3d at 361–62 ("If the plaintiff makes no inquiry once the duty to inquire arises, knowledge will be imputed as of the date the duty arose." (cleaned up)).

Instead, the uncontroverted record supports that Colony had knowledge of the alleged fraud as of early 2022. On September 30, 2021, Shifton emailed Aguilar that "we *know* now that it was Danya Cebus who retained [Oz] to provide the labor to cut the louvers." JSF ¶ 34 (emphasis added). And, on February 7, 2022, Strong wrote Clerkin a letter stating that Oz had contracted with Danya Cebus to provide OSHA-certified temporary laborers to staff the Project; Danya Cebus had requested Oz cut louvers; and Oz had invoiced Danya Cebus for that work. *Id.* ¶¶ 37–40. That letter did not reflect mere allegations. It reported Strong's understanding of the relevant facts based on substantial discovery (13 depositions) and two mediations. Feb. 7, 2022 Letter at 5, 15; *see also id.* at 10–11 (summarizing testimony of Danya Cebus's chief executive officer, who stated that Danya Cebus had retained Oz "to provide laborers" for the Project, and had asked Oz "to send additional manpower" to cut louvers, which Oz did); *id.* at 11–12 (same as to Danya Cebus's project manager, who stated that Oz "was simply told to cut the louvers, and they did so"); *id.* at 13 (same as to Project's HVAC subcontractor, who stated that Oz workers transported PTACs into units and "physically placed the PTACs into the sleeves").[9]

---

[9] The letter further stated: "These depositions have all been reported to you separately, but for the sake of convenience, we will reproduce the most relevant testimony here." Feb. 7, 2022

These communications, which were transmitted directly from retained counsel for the Oz defendants to Colony's claim adjusters, should have alerted Colony to the purported misrepresentations in Oz's insurance applications.[10]  Accordingly, based on the undisputed facts and evidence, it is proper to impute knowledge of the alleged fraud to Colony as of, at the latest, February 7, 2022.

Because Colony discovered the alleged fraud more than two years before it brought this action on March 14, 2024, Colony's claims are time-barred, unless an exception to the statute of limitations applies. *See, e.g., Pare v. Pare*, 202 N.Y.S.3d 363, 368 (2d Dep't 2023) (fraud claims time-barred where "it conclusively appears that the plaintiff had knowledge of facts which should have caused her to inquire and discover the alleged fraud"); *Shalik v. Hewlett Assocs., L.P.*, 940 N.Y.S.2d 304, 306 (2d Dep't 2012) (same, where "plaintiffs possessed information" regarding the alleged fraud "more than two years before they filed the complaint"); *Aldrich v. Marsh & McLennan Cos., Inc.*, 861 N.Y.S.2d 30, 31 (1st Dep't 2008) (same, where plaintiffs "could have, with reasonable diligence, discovered the alleged fraud well before the

---

Letter at 5.  That suggests that Colony's claim adjuster received additional information, either in tandem with the February 7 letter or before it, suggestive of the alleged fraud.

[10] Colony suggests that it is not accountable for information communicated to its claims adjusters. *See* Dkt. 202-11 ("Prestimonico Decl.") ¶¶ 11–12, 19–20 (acknowledging Tender Letter and Feb. 7, 2022 Letter, but stating that "*underwriting department* was not aware" of information stated in these documents (emphasis added)).  But the claims adjusters, who were employees of Colony's parent company, were "agents" of Colony. *Malewich v. Indian Harbor Ins. Co.*, No. 24 Civ. 7406, 2026 WL 482626, at *3 (E.D.N.Y. Feb. 20, 2026) ("It is clear that claims adjusters are agents of the insurer.").  "It is well settled that 'knowledge acquired by an agent acting within the scope of his [or her] agency is imputed to his [or her] principal and the latter is bound by such knowledge although the information is never actually communicated to [the principal].'" *Chaikovska v. Ernst & Young, LLP*, 913 N.Y.S.2d 449, 452 (4th Dep't 2010) (quoting *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784 (1985)).  Accordingly, the Court imputes to Colony knowledge of all communications or documentation written or received by its claims adjusters.

beginning of the controlling two-year period," based on "extensive information . . . available to plaintiffs in the public domain"); *Chase Manhattan Bank, N.A. v. T & N plc*, 905 F. Supp. 107, 119 (S.D.N.Y. 1995) (same, where it was "undisputed" that plaintiff "possessed knowledge of certain facts that would have suggested to a person of ordinary intelligence the probability that it had been defrauded").

Colony's arguments to the contrary are unavailing.

First, it argues that the communications and notes highlighted by Oz could not have placed it on notice of the alleged fraud. The Employment Agreement, Colony argues, stated that Oz would supply skilled temporary workers and give temporary services, but "did not specify what those services were," Opp'n at 13 (emphasis omitted), such that it could not have informed Colony that Oz's employees "did whatever was asked of them," JSF ¶ 16. And the Feb. 7, 2022 Letter, Colony argues, provided "no indication" that Oz had cut PTAC louvers "before or after" the Project (*i.e.*, on other job sites), Opp'n at 17, such that it could not have put Colony on notice that Oz performed such tasks "on multiple job sites," JSF ¶ 17. But the information that triggers the duty to inquire "need not detail every aspect of the subsequently alleged fraudulent scheme." *Cohen*, 711 F.3d at 361 (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 427 (2d Cir. 2008)). The statements in the Employment Agreement that Oz employed temporary workers, and in the Feb. 7, 2022 Letter that, on at least one site (the property involved in the underlying action), Oz workers cut PTAC louvers, were enough to "alert a reasonable person to the probability that there were either misleading statements or significant omissions involved in the transaction." *Wen*, 695 F. Supp. 3d at 538 (cleaned up) (misrepresentation "sufficiently related to the other misrepresentations at issue in this case . . . to provide inquiry notice as to 'the fraud' as a whole").

Second, Colony argues that it reasonably relied on statements by Ziv, who was "adamant that debris and trash removal along with sweeping floors was the extent of Oz's scope of work." JSF ¶ 29. Because Colony was defending Oz in the underlying action, it argues, the Oz defendants had an obligation to provide "fair and frank disclosure" to Colony, and Colony had a right to assume the accuracy of their representations. Opp'n at 12 (citing *Coleman v. New Amsterdam Cas. Co.*, 247 N.Y. 271, 276 (1928)). But the duty of disclosure does not justify blind reliance on an insured's representations in the face of substantial contrary evidence. Here, the undisputed facts reveal that Ziv's statements were contradicted by the plaintiff's allegations in the underlying action; the facts adduced in that case's discovery and mediation; and the findings of Oz's counsel, who had been retained by Colony. In light of such information, it was not reasonable for Colony to credulously accept Ziv's representations. *See, e.g., Wen*, 695 F. Supp. 3d at 538–40 (claims time-barred where plaintiffs, who claimed reliance on defendant's misstatements, had access to memoranda that "conflicted" with those misstatements); *Hamrick v. Guralnick*, 44 N.Y.S.3d 749, 749 (1st Dep't 2017) (same where plaintiffs received "memorandum, which expressly contradicted defendants' alleged oral representations").

Based on the foregoing, the Court finds Colony's claims untimely, unless an exception to the two-year statute of limitations applies.

### B.    Whether Equitable Estoppel Applies

#### 1.    Relevant Legal Framework

Equitable estoppel is an "extraordinary remedy," which "should be invoked sparingly and only under exceptional circumstances." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (citation omitted), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (summary order). The doctrine tolls the statute of limitations where: (1) "the defendant conceals from the plaintiff the fact that he has a cause of action," or (2) "the plaintiff is aware of his cause of action, but the

defendant induces him to forego suit until after the period of limitations has expired." *Koral v. Saunders*, 36 F.4th 400, 409–10 (2d Cir. 2022) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002)).

Salient here, where a plaintiff claims such concealment, equitable estoppel requires it to prove that the "defendant made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, that the plaintiff relied on the misrepresentation and that the reliance caused plaintiff to delay bringing timely action." *Id.* at 410 (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 167 (1st Dep't 2003)). "[I]t is not enough to have been misled or defrauded. The plaintiff must demonstrate her diligence in seeking the facts." *Id.* Equitable estoppel "is unavailable to a plaintiff who possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations." *Mancuso v. Consol. Edison Co.*, 905 F. Supp. 1251, 1258 (S.D.N.Y. 1995) (citation omitted), *aff'd*, 216 F.3d 1072 (2d Cir. 2000).

### 2.    Analysis

Colony argues that it did not discover the Oz defendants' purported fraud until Ziv's February 2024 deposition in connection with the underlying action. Opp'n at 2. It claims that Ziv's oral statements (the "oral statements") to Aguilar in 2021 deterred it from investigating Oz's insurance applications, thus tolling the statute of limitations. *Id.* at 19. Colony relies on two such statements. On April 14, 2021, after receiving the Tender Letter, Aguilar spoke to Ziv, who stated that Oz never worked for Danya Cebus and never worked on the Project. Pl. Counter 56.1 ¶ 10. On June 30, 2021, Aguilar again spoke to Ziv, who stated that Oz only did cleanup (*e.g.*, took out the trash and swept the floors) at the Project, and that Oz's only contract with Danya Cebus related to the Project. *Id.* ¶ 12. Based on these statements, Colony argues that the doctrine of equitable estoppel applies.

16

The Court finds, based on the undisputed facts, that equitable estoppel does not apply. The oral statements predated, by more than seven months, Colony's receipt of the Feb. 7, 2022 Letter, which placed it on notice of the purported fraud. The statements accordingly were overtaken—they "ceased to be operational"—upon receipt of that letter and other communications to the same effect, such that they could not support tolling of the limitations period. *Simcuski v. Saeli*, 44 N.Y.2d 442, 449 (1978) (equitable estoppel inapplicable where "period during which the plaintiff was justifiably lulled into inactivity had expired"); *see also Zumpano v. Quinn*, 816 N.Y.S.2d 703, 706 (2006) (equitable estoppel inapplicable where no "[s]ubsequent conduct" by defendants altered plaintiffs' earlier "awareness of the essential facts and circumstances underlying their causes of action").

Equitable estoppel also does not apply because, even viewing the facts in the light most favorable to Colony, a jury could not rationally find its reliance on the oral statements reasonable. *See Zumpano*, 816 N.Y.S.2d at 706 ("the plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations"). Ziv's statements were directly contradicted by the Employment Agreement and information received by counsel for the Oz defendants in the underlying action. They were also inconsistent with each other: in April, Ziv stated that Oz had never worked with Danya Cebus, and in June, he stated that Oz had worked with Danya Cebus, but only on the Project. *See* Pl. Counter 56.1 ¶¶ 10, 12. Because the uncontroverted evidence would not support a finding of reasonable reliance, Colony cannot reach a jury on an equitable estoppel defense. *See, e.g.*, *Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d 548, 553 (2006) (equitable estoppel "inappropriate as a matter of law" based on defendant's "level of awareness and subsequent inaction," and because any reliance placed by plaintiff on conversation with "person affiliated with the defendant" was "unreasonable"); *Koral*, 36 F.4th at 411 (equitable estoppel

17

inapplicable where plaintiff was on notice that certain information was "incomplete or inconsistent," and "declined to probe" discrepancy, instead choosing to credit defendant's representations); *Certain Underwriters at Lloyd's v. Milberg LLP*, No. 8 Civ. 7522, 2009 WL 3241489, at *4 (S.D.N.Y. Sept. 30, 2009) (same, where plaintiffs "had good cause to doubt" defendant's "representations of innocence").

### C.    Overall Assessment

Based on all the undisputed facts and evidence, the Court finds that Colony's claims are time-barred, and that they are not saved by the equitable estoppel exception to the statute of limitations.  Based on Colony's communications and internal notes, the timing and content of which are not contested, the evidence is conclusive that, as of at least February 7, 2022, Colony knew of facts suggestive of the Oz defendants' purported fraud. *Chase Manhattan Bank, N.A.*, 905 F. Supp. at 117 (summary judgment proper where "based on the facts and circumstances, it appears conclusively that the plaintiff had knowledge of facts from which the fraud could reasonably be inferred"); *see also Franco v. Farr*, 240 N.Y.S.3d 797, 800 (1st Dep't 2025) (similar).  And Colony has not adduced evidence that would enable a rational jury to find that Ziv's misrepresentations prevented it from discovering the fraud after the start of the two-year limitations period.

Accordingly, the Court grants the Oz defendants' motion for summary judgment, finding Colony's claims untimely. *See, e.g.*, *Guilbert*, 480 F.3d at 147 (affirming summary judgment on fraud claim where circumstances "should have raised suspicion" in plaintiff "that something was awry"); *Greenway II, LLC v. Wildenstein & Co.*, 2023 WL 3001240, at *2 (2d Cir. Apr. 19, 2023) (summary order) (same, where "[a]ny reasonable trier of fact would be compelled to find" plaintiff overlooked information that "would suggest to a person of ordinary intelligence the probability that he has been defrauded"); *Franco*, 240 N.Y.S.3d at 800 (same, where plaintiffs

18

claimed not to have discovered fraud until probate proceeding but plaintiffs "had knowledge of facts that should have caused them to inquire and discover the alleged fraud"); *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 17 (E.D.N.Y. 1996) (granting summary judgment where plaintiffs provided "no proof . . . that would justify tolling the statute of limitations").

**CONCLUSION**

For the foregoing reasons, the Court grants the Oz defendants' summary judgment motion, and dismisses Colony's claims against these defendants. The Clerk of Court is respectfully directed to terminate the motion pending at docket 199.

An order will issue shortly as to next steps in the case with respect to defendant Endurance American Insurance Company.

SO ORDERED.

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: June 22, 2026
      New York, New York

19
